**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HECTOR JAVIER VALDEZ,

    Defendant-Appellant.

No. 16-3363

(D.C. No. 2:14-CR-20096-JAR-8)
(D.Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MATHESON**, **BALDOCK,** and **EID**, Circuit Judges.

Defendant Hector Valdez pleaded guilty without a plea agreement to one count

of conspiracy to distribute more than 50 grams of methamphetamine, in violation of

21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii) (Count I). He appeals his

sentence, arguing the United States Sentencing Guidelines (U.S.S.G.) calculation in

the Presentence Investigation Report (PSIR) was inaccurate. Exercising jurisdiction

under 18 U.S.C. § 3742, we affirm.

I.

Defendant participated in a drug-trafficking organization that transported and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. 32.1.

distributed methamphetamine.  On the opening day of trial,  Defendant pleaded guilty without a plea agreement.  During his change of plea hearing, Defendant agreed the Government had evidence to prove that, from November 2013 to July 2014, Defendant conspired with co-defendant, Vincencio Olea-Monarez, and others (the "Olea-Monarez group") to distribute and possess with intent to distribute more than 50 grams of methamphetamine.  The court accepted Defendant's guilty plea and ordered a PSIR.

The PSIR indicated a base offense level of 38 for the 54.43 kilograms of methamphetamine Defendant hauled for the organization.  Based on the purity and large quantity of the methamphetamine trafficked by the Olea-Monarez group—in addition to the group's extensive ties to Mexico, frequent border crossings, and intercepted phone calls—the PSIR found the drugs were imported from Mexico. Once in the United States, the group moved the methamphetamine to Phoenix, Arizona and then transported the drugs from Phoenix to Kansas City, Kansas.  The PSIR noted Defendant began working as a drug courier for Olea-Monarez in October or November 2013, making one or two trips per month from Phoenix to Kansas City until July 2014.  Since Defendant recruited another courier, Omar Francisco Orduno-Ramirez, the PSIR also attributed 30 pounds of methamphetamine Orduno-Ramirez hauled as relevant conduct.

From the base offense level 38, the PSIR subtracted two levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), but added two levels for

importation of methamphetamine, pursuant to U.S.S.G. § 2D1.1(b)(5), resulting in a total offense base level of 38. Defendant's criminal history was classified as Category I because he had no prior criminal history. Pursuant to his level 38, Category I classifications, Defendant's advisory Guideline range was 235 to 293 months' imprisonment.

Prior to the sentencing hearing, Defendant filed five objections to the PSIR. The district court overruled all five objections and sentenced Defendant to 235 months. On appeal, Defendant reasserts three of his prior objections and adds one new issue. First, Defendant claims he did not qualify for the two-level enhancement for importation because he did not know the methamphetamine was imported from Mexico. Second, Defendant claims he qualified for a four-level reduction because he was a minimal participant in the offense. Third, Defendant argues the district court incorrectly determined the time period he was involved with the conspiracy. Fourth, Defendant argues the sentencing court failed to correctly apply 18 U.S.C. § 3553(a)(6), which requires a court to "avoid unwarranted sentence disparities" among similarly situated defendants. Regarding the first three issues, we review a district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Serrato*, 742 F.3d 461, 468 (10th Cir. 2014). We review Defendant's fourth claim regarding the reasonableness of his sentence for abuse of discretion. *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008).

3

II.

First, Defendant contends his sentence was improperly enhanced because he did not know the methamphetamine was imported from Mexico. The district court enhanced Defendant's base offense level by two levels because "the offense involved the importation of . . . methamphetamine." U.S.S.G. § 2D1.1(b)(5).[3] Defendant argues the enhancement was inappropriate because the Government did not establish, by a preponderance of the evidence, that Defendant knew the drugs were imported from Mexico. This issue involves the correct interpretation of the latter phrase in § 2D1.1(b)(5): "that the defendant knew were imported unlawfully." Defendant contends the scienter requirement applies to all offenses mentioned in § 2D1.1(b)(5), not just to offenses involving the manufacture of methamphetamine from listed chemicals. This Court has not yet squarely addressed this scienter issue and we need not in this case. Regardless of the correct interpretation of the Guidelines, we determine the Government proved by a preponderance of the evidence that Defendant knew the methamphetamine was imported.

The trial court found, "the circumstantial evidence suggests, as well as the evidence from his own words in the calls with Mr. Olea-Monarez, by a preponderance of the evidence shows that he was aware" the methamphetamine he

---

[3] "If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels." U.S.S.G. § 2D1.1(b)(5).

hauled was imported from Mexico.  ROA vol. 2, at 1130.  Specifically, Defendant made multiple trips to Mexico in coordination with other members of the conspiracy, helped smuggle people from Mexico to the United States with the same group that trafficked methamphetamine from Mexico, and conversed with the group leader using a Mexico-based phone to discuss "fruit-flavored water [deliveries] to a restaurant" (likely code words for drug trafficking).[4]  ROA vol. 2, at 1131.  Given this evidence, we cannot say the district court committed clear error in holding Defendant "understood that they were importing the methamphetamine from Mexico through the same channels that they were importing and smuggling illegal aliens in." ROA vol. 2, at 1132–33.

Second, Defendant argues the district court erred by not applying a four-level reduction as a minimal participant, pursuant to U.S.S.G. § 3B1.2(a).  Subsection (a) applies to a defendant who "plays a minimal role in the criminal activity.  It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group."  18 U.S.C. § 3B1.2 cmt. 4.  "Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." *Id.*

The trial court determined Defendant did not qualify for a four-level reduction

---

[4] Lopez testified he heard methamphetamine referred to as "water."  ROA vol. 1, at 437.

because he was not a minimal participant. Defendant was the longest-tenured and primary courier for the organization. But he was not merely a courier within the transportation apparatus of the drug trafficking organization. Defendant knew organizational aspects of the Olea-Monarez group, including who the key players were, how to contact them, and how the organization operated to smuggle people across the border. Such knowledge suggests "an intimacy of a relationship and an involvement that surpasses just a very minor courier." ROA vol. 2, at 1135–36. The district court, therefore, did not clearly err in finding Defendant was not a minimal participant.

Third, Defendant contends the district court erred in finding he was involved in the conspiracy from approximately November 2013 to July 2014. Despite pleading guilty to Count I of the Superseding Indictment, which described his involvement with the conspiracy during that time period, Defendant now argues he did not become involved until February 2014 and ended his involvement on July 8, 2014. He cites a hospital stay for pneumonia, a car accident, and a full-time job as reasons he was unable to drive in December 2013 and January of 2014. The testimony of the primary methamphetamine supplier for the Olea-Monarez group, Gabriel Agustin Lopez, however, contradicts Defendant's explanations. During Lopez's testimony at Olea-Monarez's trial, Lopez stated Defendant began driving when the group's former courier stopped working in November or December 2013. ROA vol. 1, at 472–73. He also testified that Defendant continued to drive until an

6

incident in 2014 when Defendant reported being followed while driving drug proceeds from Kansas City to Phoenix. ROA vol. 1, at 504. The trial court stated, "[b]y a preponderance of the evidence, Mr. Lopez'[s] testimony that this defendant's involvement began in November or December of 2013 is credible. And that his last load was in July of 2014, also credible. It's corroborated by surveillance, it's corroborated by intercepted conversations." ROA vol. 2, at 1136. In light of this testimony, we find Defendant's pneumonia, car accident, and job explanations to be unavailing. We, therefore, find no error in the trial court's determination.[5]

Fourth, Defendant argues the sentencing court abused its discretion in imposing a 235-month sentence by failing to avoid sentence disparities as required under 18 U.S.C. § 3553(a)(6), which states:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Defendant's sentence was higher than eight co-defendants and lower than one. Defendant argues (1) co-defendants who received shorter sentences were involved to an equal or greater extent as Defendant, and (2) the lesser sentences among his co-

---

[5] Defendant also argues a shorter period of involvement should change the amount of drugs attributable to him. Defendant contends he "should be responsible for no more than 30 lbs of methamphetamine or 13.6075 kilograms." Def. Br. at 16. Such a distinction is a purely academic exercise because it does not change Defendant's base offense level. We, therefore, decline to reach this issue.

7

defendants cannot be attributed to lesser criminal histories (because Defendant had no criminal history) or by their cooperation with the Government (because the co-defendants who did cooperate still received sentences lower than Defendant's without a 50% reduction).[6]

During sentencing, the trial court considered the applicable Guidelines range, took note of the co-defendants' sentences, and concluded a variance for Defendant was not appropriate. The trial court explained, "there is definitely sentencing disparity here, but it's not unwarranted [because] . . . the majority of people in this conspiracy were not as intimately involved, weren't involved as long, weren't endowed with the trust and decision-making capacity that this defendant was and they cooperated." ROA vol. 2, at 1154. This record makes it clear the district court considered the need to avoid unwarranted disparities under § 3553(a)(6). The district court determined a longer sentence than some of his co-defendants was warranted because Defendant played an integral role in the conspiracy far beyond the role of a low-level courier. And unlike several of his co-defendants, Defendant did not cooperate with the Government. Based on the record before us, the district court did not abuse its discretion by sentencing Defendant within the Guidelines range.

\*\*\*

---

[6] Three co-defendants cooperated and provided critical testimony: Rosalio Chinchilla, who made hideaway compartments to stash drugs, received a 105-month sentence, Jose Luis Silva-Cardona, who ran errands and made small drug sales, received a 78-month sentence, and Lee Thomas Faulkner, who was a small drug dealer, received a 97-month sentence.

8

For the reasons stated, the district court did not err in overruling Defendant's objections to the PSIR or abuse its discretion in sentencing Defendant.

AFFIRMED.

Entered for the Court


Bobby R. Baldock
United States Circuit Judge